**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **SERGEY KOLESNIKOV,** *et al.*, | |
| Plaintiffs, | |
| v. | Civil Action No. 23-1675 (TSC) |
| **ANTONY BLINKEN,** *et al.*, | |
| Defendants. | |

**<u>MEMORANDUM OPINION</u>**

Plaintiffs Sergey Kolesnikov and Anastasia Kolesnikova have sued Antony Blinken, the U.S. Secretary of State, and Meghan Gregonis, the Consul General of the U.S. Consulate in Dubai ("Defendants"). Plaintiffs contend that the process leading to the denial of their visa applications was unlawful, and seek a court order directing Defendants to collect additional information and "exercise actual discretion in processing and adjudicating [a] new application for a nonimmigrant visa." Compl. ¶ 53, ECF No. 1. Defendants have moved to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defs.' Mot. to Dismiss, ECF No. 5 ("MTD"). For the reasons set forth below, the court will GRANT Defendants' Motion.

## I.    BACKGROUND

The Immigration and Nationality Act ("INA") governs the issuance of visas to foreign nationals who seek to enter the United States on a permanent ("immigrant") or temporary ("nonimmigrant") basis. 8 U.S.C. § 1101 *et seq*. Within that framework, the "B-1" and "B-2" nonimmigrant visa categories are intended for foreign nationals who reside abroad but intend to "visit[] the United States temporarily for business or temporarily for pleasure." *Id.*

§ 1101(a)(15)(B).  This case concerns Plaintiffs' efforts to obtain a B-1/B-2 visitor's visa.  At the motion to dismiss stage, the court assumes the truth of the following allegations.

"Plaintiffs are natives and citizens of the Russian Federation and lawful residents of Dubai, U.A.E."  Compl. ¶ 4.  Between 2019 and 2022, they applied three times for B-1/B-2 visas at U.S. Consulates in France, Czech Republic, and United Arab Emirates.  *Id.* ¶¶ 18, 28, 34.  In all three instances, the consular officer reviewing their applications denied their application without requesting any supporting documentation.  *Id.* ¶¶ 22–23, 33, 39–40.  Each time, the officer told Plaintiffs that "you were not able to demonstrate that your intended activities in the United States would be consistent with the classification of the nonimmigrant visa for which you applied."  *Id.* ¶¶ 23, 33, 39.  "No further information regarding the visa refusal was provided to the couple."  *Id.* ¶¶ 24, 33, 43.

Plaintiffs claim that these denials violated the Administrative Procedure Act ("APA") and "failed to discharge [Defendants'] clear ministerial duties."  *Id.* ¶¶ 40–51.  In particular, they contend that Defendants violated their right to a visa adjudication "process that involves using reasonable exercise of discretion and engaging in consideration of the factors that bear on such exercise of discretion," such as "the applicant's employment, income, overall financial condition, and other similar factors."  *Id.* ¶¶ 42, 46.  The relief they seek is "an order in the nature of mandamus, compelling Defendants to collect information necessary for the exercise of discretion, to exercise discretion in adjudicating Plaintiffs' visa application."  *Id.* ¶ 52.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must establish that the court has subject matter jurisdiction over its claim.  *Moms Against Mercury v. Food & Drug Admin.*, 483 F.3d 824, 828 (D.C. Cir. 2007).  In evaluating such motions, courts "assume the truth of all material factual allegations in the complaint and

'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." But, as with a 12(b)(1) motion, courts "treat the complaint's factual allegations as true" and "grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quotation marks and citation omitted). That said, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. And a court need not accept as true "a legal conclusion couched as a factual allegation," nor "inferences . . . unsupported by the facts set out in the complaint." *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quotation omitted).

### III.   ANALYSIS

The court cannot grant Plaintiffs the relief they seek. The INA charges the Secretary of State "with the administration and the enforcement of . . . immigration and nationality laws relating to . . . the powers, duties, and functions of diplomatic and consular officers of the United States, except those powers, duties, and functions conferred upon the consular officers relating to the granting or refusal of visas." 8 U.S.C. § 1104(a). And it expressly delegates to consular officers the decision whether to issue immigrant and nonimmigrant visas. *Id.* § 1201(a). Accordingly, the D.C. Circuit has held that "[t]he INA confers upon consular officers exclusive authority to review applications for visas, precluding even the Secretary of State from controlling

their determinations." *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1156 (D.C. Cir. 1999); *see Baan Rao Thai Rest. v. Pompeo*, 985 F.3d 1020, 1024 (D.C. Cir. 2021). That exclusive authority covers "the granting, denying[,] and revoking of immigrant and non-immigrant visas." *Saavedra Bruno*, 197 F.3d at 1156; *see Baan Rao*, 985 F.3d at 1024.

In recognition of that exclusive authority, courts apply the consular nonreviewability doctrine, which "shields a consular official's decision to issue or withhold a visa from judicial review." *Baan Rao*, 985 F.3d at 1024. The doctrine's purpose is to "prevent[] a federal court from second-guessing a United States consular officer's decision to issue or withhold a visa." *Id.* at 1023. There are only two exceptions to the doctrine: (1) "an American citizen can challenge the exclusion of a noncitizen if it burdens the citizen's constitutional rights," and (2) a challenge can proceed "if a 'statute expressly authorizes judicial review of consular officers' actions.'" *Id.* at 1024–25 (quoting *Saavedra Bruno*, 197 F.3d at 1159) (alteration adopted).

Because Plaintiffs' visa applications were adjudicated and denied by a consular officer, the consular nonreviewability doctrine bars their claims. Plaintiffs do not attempt to argue that their claims fall under either exception to the doctrine. Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss at 3, ECF No. 7 ("Opp'n"). Instead, they argue that the doctrine does not apply because they are not challenging any consular decision but instead the officers' repeated failures to "request any supporting documentation." *Id.* at 5. But a plaintiff cannot "circumvent the doctrine by claiming that he is not seeking a review of the consular officer's decision, but is challenging some other, related aspect of the decision." *Malyutin v. Rice*, 677 F. Supp. 2d 43, 46 (D.D.C. 2009), *aff'd*, No. 10-5015, 2010 WL 2710451 (D.C. Cir. July 6, 2010). Judicial review of what a consular officer chose to consider (or not) in denying a visa "cannot be divorced" from judicial review of the denial itself. *Thatikonda v. U.S. Dep't of Homeland Sec.*, No. 1:21-CV-

1564-RCL, 2022 WL 425013, at *6 (D.D.C. Feb. 11, 2022).  And the relief Plaintiffs seek—an order requiring Defendants to "collect information" and "exercise actual discretion in processing and adjudicating Plaintiffs' new application for a nonimmigrant visa," Compl. ¶ 53(b)—would amount to "second-guessing" the prior visa denials, *Baan Rao*, 985 F.3d at 1023.  Under the consular nonreviewability doctrine, the court cannot grant that relief, and must dismiss the Complaint.

Moreover, Defendants correctly note that the Secretary of State is not properly sued here because he cannot provide the relief that Plaintiffs seek.  The INA's exclusive grant of visa review authority to consular officers "preclud[es] even the Secretary of State from controlling their determinations."  *Id.* at 1024 (quoting *Saavedra Bruno*, 197 F.3d at 1156).  As a result, Secretary Blinken could not lawfully order the consular officers who denied Plaintiffs' applications to revisit their denied applications, and therefore must be dismissed as a defendant.[1]

---

[1] Defendants also seek dismissal on the grounds that "Plaintiffs lack Article III standing to bring their claims."  MTD at 7.  They rely principally on a stray statement from *Van Ravenswaay v. Napolitano*, which noted "a long line of cases explaining that non-resident aliens lack standing to challenge the determinations associated with their visa applications, which belong to the political and not judicial branches of government."  613 F. Supp. 2d 1, 5 (D.D.C. 2009).  But more "recent cases in this district say otherwise."  *See Pourabdollah v. Blinken*, No. 23-CV-1603 (DLF), 2024 WL 474523, at *4 (D.D.C. Feb. 7, 2024).  That is because, on closer review, *Napolitano*'s "long line of cases" dismissing challenges to visa application decisions are based largely on the consular nonreviewability doctrine, not Article III standing.  *Id.*  Thus, the authority underlying Defendants' separate bid for dismissal is not really separate at all—just consular nonreviewability, repackaged.  Moreover, to the extent that line of cases held that "an unadmitted and nonresident alien[] ha[s] no constitutional right of entry to this country," *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972), that does not preclude visa applicants from demonstrating the requisite harm, traceability, and redressability for Article III standing in other ways, *Pourabdollah*, 2024 WL 474523, at *4.  Defendants do not contest that Plaintiffs satisfy those elements here, so the court bases the dismissal in this case on the consular nonreviewability doctrine.

### IV.     CONCLUSION

For these reasons, the court will GRANT Defendants' Motion to Dismiss, ECF No. 5.  A corresponding Order will accompany this Memorandum Opinion.

Date: August 2, 2024

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge